UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MOUNT SINAI HOSPITAL,

        Appellant,

  - against -

CORALIA ARANA and FIDEL E. ARANA,

        Appellees.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-5360 (RRM)
11-CV-6194 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

    Mount Sinai Hospital ("Mount Sinai") seeks leave to appeal a September 22, 2011 interlocutory order of the United States Bankruptcy Court for the Eastern District of New York reopening Coralia and Fidel Arana's ("the Aranas") Chapter 7 case. (Doc. No. 1.) On October 4, 2011, Mount Sinai filed a notice of appeal, and on October 11, 2011, it filed a motion for leave to appeal. (Decl. of Christopher Simone (Doc. No. 1-3) at ¶ 4.) On December 7, 2011, the Aranas filed an opposition to Mount Sinai's motion. (Doc. No. 3.) For the reasons set forth below, Mount Sinai's motion is denied.

## BACKGROUND[1]

    On September 26, 2005, the Aranas filed a medical malpractice action in New York Supreme Court, Kings County, against Mount Sinai Hospital for injuries allegedly sustained by Fidel Arana. *In re Arana*, 456 B.R. at 166. The Aranas seek about $1.75 million in damages from Mount Sinai. *Id.* at 167. On October 15, 2005, the Aranas filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of New York. *Id.* at 166.

---

[1] The facts in this section, unless otherwise noted, are taken from the September 22, 2011 bankruptcy court order issued by Judge Elizabeth S. Stong, and are not in dispute. *In re Arana*, 456 B.R. 161, 169 (Bankr. E.D.N.Y. 2011).

On October 31, 2005, the Aranas filed schedules of assets and liabilities supporting their bankruptcy petition. *Id.* The Aranas scheduled $7,000.00 in assets, including clothing and household goods, but did not list the malpractice action as an asset. *Id.* They scheduled $112,862.83 in unsecured debt. *Id.* A Chapter 7 trustee was appointed by the Bankruptcy Court. *Id.*

On December 15, 2005, the Aranas appeared *pro se*[2] with an interpreter at a meeting of creditors held pursuant to Bankruptcy Code Section 341(a), and were examined by the trustee's representative. *Id.* In response to questions from the trustee's representative, the Aranas stated that they were not presently plaintiffs in, nor did they have a right to maintain, any action for damages. *Id.* The trustee subsequently issued a report of no distribution, and on April 20, 2006, the Bankruptcy Court issued an order granting the Aranas a discharge of all of their debt and closing the case without a distribution to the creditors. *Id.*

The Aranas' malpractice action in state court continued to progress. *Id.* On November 13, 2006, Coralia Arana testified in a deposition that she and Mr. Arana had filed for bankruptcy in 2005. *Id.* On July 15, 2009, the Aranas' counsel in the malpractice case filed a note of issue and certificate of readiness indicating that the case was ready for trial. *Id.* However, on October 5, 2010, several years after learning of the bankruptcy filing, Mount Sinai moved in state court to dismiss the malpractice action on the ground that the Aranas lacked capacity to sue.[3] *Id.*

Prior to a hearing in state court on Mount Sinai's motion to dismiss the malpractice action, the Aranas moved in the Bankruptcy Court to reopen their case to add the malpractice

---

[2] Although the Aranas appeared in bankruptcy court *pro se*, they received assistance in preparing their petition from We the People USA, Inc., a bankruptcy petition preparer.

[3] As the bankruptcy court explained: "When a bankruptcy petition is filed, an estate is created and the debtor's property, including any prepetition claims held by the debtor, becomes part of the bankruptcy estate . . . . In a Chapter 7 case, the United States Trustee appoints an interim Chapter 7 trustee . . . . Only the Chapter 7 trustee may administer property of the estate, including bringing actions on behalf of the estate." *In re Arana*, 456 B.R. at 169 (citations omitted). Thus, the Aranas' malpractice claim became property of the estate and the trustee was the only party with standing to pursue the state court case.

action as an asset, thereby enabling the trustee to pursue the claim. *Id.* On July 8, 2011, the bankruptcy court held an evidentiary hearing, at which the Aranas testified about the circumstances leading to their failure to disclose the malpractice action as an asset in their initial filings. *Id.* The Aranas generally testified that they did not understand that the lawsuit was an asset,[4] and that Fidel was not even aware that the suit had been filed until about one year after the Section 341(a) meeting. *Id.* at 167-68. Other testimony established that Fidel Arana had been visited at home by a personal injury attorney prior to the filing of both the malpractice action and the bankruptcy petition, and that he had also visited his attorney's office with Mrs. Arana in connection with the malpractice case. *Id.* Mount Sinai opposed the Aranas' motion to reopen the case on the ground that the Aranas had omitted the malpractice action from their asset schedule in bad faith.

On September 22, 2011, the bankruptcy court issued an opinion granting the Aranas' request to reopen their case and add the malpractice action as an asset. *Id.* at 177-78. The bankruptcy court held that the Aranas had established that: (1) the creditors would benefit from allowing the Aranas to reopen the case because they never received a distribution, but might if the Aranas prevailed in the malpractice action; (2) the Aranas would benefit from being allowed to reopen the case because they would be able to continue the malpractice action and possibly retain any money remaining after a distribution to the creditors; and (3) Mount Sinai would not be prejudiced beyond the extent to which it would be required to defend the malpractice action on the merits. *Id.* at 174-77. Notably, the bankruptcy court found that the Aranas testified credibly regarding their reasons for not listing the malpractice action as an asset and that they did not act in bad faith or commit fraud. *Id.* at 176-77. Specifically, Judge Stong also made

---

[4] At the time the Aranas received assistance from We the People in preparing their petition, that organization was enjoined from explaining to debtors what they were required to disclose. *In re Arana*, 456 B.R. at 176 n.2.

credibility findings, holding that "the Aranas' testimony was straightforward, credible, and consistent with their lack of sophistication in legal and financial matters, and shows that they were not aware of their obligation to disclose their claim against Mount Sinai." *Id*. at 176.

On October 4, 2011, Mount Sinai timely filed a notice of appeal, (Doc. No. 1), seeking review in this Court of whether the bankruptcy court abused its discretion in finding that the Aranas did not act in bad faith when they failed to disclose the malpractice action on their asset schedule. (Appellant's Mem. (Doc. No. 1-4).) As Mount Sinai concedes, the Bankruptcy Court's order was interlocutory and Mount Sinai was thus required to also seek leave to appeal, which it did five days after the applicable deadline. (Decl. of Christopher Simone (Doc. No. 1-3) at 2.)

Mount Sinai argues that it should be granted leave to appeal because: (1) the bankruptcy court's decision to reopen the petition concerns a controlling question of law; (2) there is substantial ground for a difference of opinion about whether the Aranas' acted in bad faith; and (3) the ultimate termination of the litigation would be materially advanced because the malpractice action would be dismissed if this Court reverses the order below. (Appellant's Mem. (Doc. No. 1-4).) The Aranas have filed an opposition to Mount Sinai's motion, arguing that it was not timely filed, and alternatively arguing the merits of the appeal. (Appellees' Opp. (Doc. No. 3).) The Aranas' opposition does not address Mount Sinai's substantive argument that it should be granted leave to file an appeal.

4

**STANDARD OF REVIEW**

Under 28 U.S.C. § 158(a)(3), a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court. *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003). While neither section 158 nor the Bankruptcy Rules provide guidelines for determining whether a district court should grant leave to appeal, most district courts in this Circuit have applied the standard for certifying an interlocutory appeal from a district court order, set forth in 28 U.S.C. § 1292(b). *See In re Cutter*, 2006 WL 2482674, at *3 (E.D.N.Y. Aug. 29, 2006).[5] Leave to appeal should thus be granted where: (1) "such order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Yerushalmi v. Shibolelth*, 405 B.R. 44 (Bankr. E.D.N.Y. 2009). All three requirements set forth in section 1292(b) must be met for a court to grant leave to appeal. *See N. Fork Bank v. Abelson*, 207 B.R. 382, 390 (Bankr. E.D.N.Y. 1997). Interlocutory appeal under section 1292(b) is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). For the reasons set forth below, this Court denies leave to appeal.

**DISCUSSION**

**I.      Time for Filing a Motion for Leave to Appeal**

Preliminarily, the Court turns to the Aranas' claim that Mount Sinai's motion for leave to appeal is untimely. To appeal an interlocutory judgment, order, or decree of a bankruptcy judge to a district court, a party must file a notice of appeal accompanied by a motion for leave to appeal. Fed. R. Bankr. P. 8001(a), (b). The notice of appeal must be filed with the clerk within

---

[5] Mount Sinai does not argue alternatively that leave to appeal should be granted under the collateral order doctrine. *See, e.g.*, *In re Cutter*, 2006 WL 2482674, at *4.

14 days of the date of the entry of the judgment, order, or decree. Fed. R. Bankr. P. 8002(a). If a notice is timely filed, but unaccompanied by the required motion for leave to appeal, the district court may grant leave to appeal or direct that a motion for leave to appeal be filed. Fed. R. Bankr. P. 8003(c). "The district court . . . may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal. Unless an order directing that a motion for leave to appeal be filed provides otherwise, the motion shall be filed within 14 days of entry of the order." *Id.*

Mount Sinai failed to seek leave to appeal the September 22, 2011 bankruptcy court order within the 14-day period specified in the rules, although it did timely filed a notice of appeal. While the Aranas repeatedly point in their opposition to the lapse of this 14-day deadline, they give no rationale for denying the motion on this basis alone. (Appellees' Opp. (Doc. No. 3) at ¶¶ 2-4.) The Aranas have not, for example, argued that they were prejudiced by the untimely filing. Moreover, Rule 8003 further provides that the Court may consider a notice of appeal to constitute a motion for leave to appeal. Indeed here, both sides have briefed the merits of whether such leave should be granted. Because Mount Sinai's notice of appeal was timely filed, and because the Aranas have not provided any reason why the Court should not consider it as a motion for leave to appeal, the Court, in the exercise of its discretion under Rule 8003, will consider its timely notice of appeal to constitute a timely request for leave.

## II.     Requirements for Granting Leave to Appeal

As noted above, interlocutory review of a bankruptcy court order is extended to pure questions of law which are controlling of the action's outcome. *See, e.g., In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 73-74 (Bankr. S.D.N.Y. 2007). District courts in this Circuit generally deny leave to appeal interlocutory orders where a review of the bankruptcy court's

factual determinations is necessary. *See, e.g.*, *Enron Corp. v. Springfield Assocs., L.L.C. ("Enron/Springfield")*, 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006) (noting that, to grant leave, "the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record.") (quoting *In re Worldcom*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)). Thus, "where a legal issue is essentially fact based in nature interlocutory appeal is not appropriate." *In re Complete Retreats, LLC*, 2008 WL 220752, at * 2-3 (D. Conn. Jan. 23, 2008) (quotation marks omitted); *see also In re Perry H. Koplik & Sons, Inc.*, 377 B.R. at 75; *accord In re Lehman Bros. Holdings, Inc.*, 422 B.R. 403, 407 (Bankr. S.D.N.Y. 2009); *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. at 74.

The order from which Mount Sinai seeks interlocutory appeal is grounded in the exercise of the Bankruptcy Court's equitable powers. Bankruptcy Code Section 350(b) states that a bankruptcy case that has been fully administered and close "may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); *see also In re Zinchiak*, 406 F.3d 214, 224 (3d Cir. 2005) ("It is well-recognized that a bankruptcy proceeding may be reopened to administer estate assets and to determine whether additional assets may be available for creditors of the estate.") Bankruptcy courts have broad discretion when deciding whether to reopen a closed case. *See In re Farley*, 451 B.R. 235, 237 (Bank. E.D.N.Y. 2011); *In re Lowrey*, 398 B.R. at 514. The decision "invoke[s] the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case." *In re I. Appel Corp*, 104 Fed Appx. 199, 200 (2d. Cir. 2004) (internal quotation marks omitted); *see In re Apex Oil Co.*, 406 F.3d 538, 543 (8th Cir. 2005).

Given these principles, it is not surprising that the order Mount Sinai seeks to appeal turns on Judge Stong's factfinding and assessment of the Aranas' credibility, as well as the equitable balancing of the interests involved. Judge Stong developed a record that included, *inter alia*: (1) a transcript of the meeting with the trustee's representative at which the Aranas were asked whether they had any personal injury claims; (2) testimony given by the Aranas at a July 8, 2011 evidentiary hearing before Judge Stong; and (3) exhibits submitted to the bankruptcy court at the July 8, 2011 hearing. *In re Arana*, 456 B.R. at 166. On any appeal, this Court would necessarily need to review all of the testimony and other evidence before the bankruptcy court. That review of the record is precisely the type of "heavily fact-based analysis," *In re Complete Retreats, LLC*, 2008 WL 220752, at *3, that district courts in the Second Circuit decline to review on interlocutory appeal. *See also In re Perry H. Koplik & Sons, Inc.*, 377 B.R. at 75. Indeed, it is not a controlling question of law that Mount Sinai seeks to challenge in this interlocutory appeal; rather, it is the Bankruptcy Court's determination of facts and the exercise of its equitable powers under well-settled law.

Moreover, the Court should only grant leave to file an interlocutory appeal where the case law shows there to be a substantial ground for difference of opinion with respect to a controlling question. *In re Pappas*, 207 B.R. 379, 381 (2d Cir. 1997). "Substantial ground for difference of opinion exists where '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *In re Coudert Bros.*, 447 B.R. 706, 712 (Bankr. S.D.N.Y. 2011) (quoting *Enron,* 2006 WL 2548592, at *4).

"At least some precedent that bears on the matter, however thin, may establish a substantial ground for dispute." *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2011 WL 6057927, at *5 (S.D.N.Y. Dec. 6, 2011). "Generally speaking, the substantial

8

difference of opinion standard is met if there is a circuit split on the controlling question . . . ." *In re Complete Retreats, LLC*, 2008 WL 220752, at *3. However, "[m]erely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion." *Ellsworth, et al v. Myers, et al (In re Cross Media Mktg. Corp.)*, 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007) (citing *Estevez–Yalcin v. Children's Vill.*, 2006 WL 3420833, at *4 (S.D.N.Y. Nov. 27, 2006

Mount Sinai has not established a ground for difference of opinion on a controlling question of law. Mount Sinai argues that Judge Stong's order "conflicts with the long-held principle of bankruptcy law requiring Debtors seeking benefits from bankruptcy filings to satisfy a corollary obligation to schedule all assets and property interests . . . . Contrary to the [bankruptcy] Court's finding, the Debtors' lack of good faith and inadvertence can be inferred from the record." (Appellant Mem. (Doc. No. 1-4) at 5-6.) In other words, Mount Sinai contends that Judge Stong applied the proper legal standard incorrectly. *See In re Cross Media Mktg. Corp.*, 2007 WL 2743577, at *2 ("Defendants do not claim that the Bankruptcy Court employed the wrong legal standard in deciding their motion, but rather they contend that the court erred in applying that standard."); *see also In re Perry Koplik & Sons, Inc.*, 377 B.R. at 74 ("[A] bare claim that a bankruptcy court's ruling was incorrect is not sufficient to satisfy the standard.") (citation omitted). Once again, this challenge rests solely on Judge Stong's resolution of the facts and the exercise of her equitable powers. As such, itdoes not rise to a difference of opinion on a controlling question of law.

9

The cases Mount Sinai cites in support of its argument on this issue are wholly inapposite. Both *In re Lowery*, 398 B.R. 512 (E.D.N.Y. 2008) and *In re Meneses*, 2010 WL 813975 (Bankr. E.D.N.Y. 2010) are cases where bankruptcy judges denied motions to reopen debtors' cases. While the outcomes in these cases are different than the outcome here, they do not establish a conflict of authority, but rather show the application of well-settled law to different sets of facts. *See Adhikari v. Daoud & Partners*, 2012 WL 718933, at *4 (S.D. Tex. Mar. 5, 2012) ("distinctions must be drawn between disagreements on questions of law, and questions that turn on the facts . . . . while there may be some ground for difference of opinion as to the Court's application of the facts in this case to established law, there is no conflicting authority on the relevant legal standard to be applied."). Simply put, while there may be a difference of opinion as to where the equities lie, it is not a difference of opinion grounded in a controlling question of law. *See In re Cross Media Mktg. Corp.*, 2007 WL 2743577, at *2. [6]

---

[6] Because Mount Sinai fails to establish a substantial ground for difference on a controlling question of law, the Court does not reach the issue of whether an immediate appeal would materially advance the ultimate termination of the litigation.

## CONCLUSION

For the reasons set forth above, Mount Sinai's motion for leave to appeal is denied. As such, this appeal is dismissed. The Clerk of Court is directed to close the file.[7]

SO ORDERED.

Dated: Brooklyn, New York
August 12, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

---

[7] As noted in a letter from Mount Sinai's Counsel dated January 10, 2012, this appeal appears to have been docketed twice under two separate docket numbers--11-CV-5360 and 11-CV-6194 – both assigned to the undersigned. As such, both appeals are dismissed.

11